IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LARRY MARK POLSKY ON BEHALF | § | |
| OF HIMSELF AND ON BEHALF OF | § | |
| THE CLASS HE SEEKS | § | |
| TO REPRESENT, | § | CIVIL ACTION NO. B-20-CV-146 |
| Plaintiff, | § | |
| | § | |
| Vs. | § | |
| UNITED OF OMAHA | § | |
| LIFE INSURANCE COMPANY AND | § | |
| OMAHA SUPPLEMENTAL INSURANCE | § | |
| COMPANY | § | |
| Defendants. | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**COMES NOW,** LARRY MARK POLSKY, on behalf of himself and as a MEMBER OF A "CLASS", Plaintiff, pursuant to the parties filed stipulation to amend authorizing the filing of this Amended Complaint and pursuant to *Texas (Business Commerce code 17.46(6)(2)* and sues the Defendants, United of Omaha Life Insurance Company and Omaha Supplemental Insurance Company and would show as follows:

1. This is an action for money damages in an amount between $25,000 and $250,000 for Plaintiff and each member of the Plaintiffs "putative" class, exclusive of attorney fees, costs and pre-judgment interest against each Defendant.

2. This Texas cause of action is being computed utilizing the two year statute of limitations in the *Texas (Deceptive Trade (practices JAct, Section 17. 565* beginning two years prior to April 16, 2020 i.e. April 16, 2020 was the mailing date of the Texas Deceptive Trade Practice letter to Defendant... said letter being proper "Notice" to both Defendants of the

Plaintiffs claims so April 16, 2018 is the beginning date for the Texas Deceptive Trade Practice Claim, (see **Exhibit "A"**)

3. Plaintiff is a resident of Cameron County, an attorney licensed in Texas and over the age of 21 years.

**L**

**JURISDICTION AND VENUE**

4. Plaintiff individually and on behalf of the entire class, seeks total monetary relief exceeding $5,000,000 within the Jurisdictional limit of this court.

5. There is a "projected class" in Texas exceeding 10,000 policy holders who possess Medi-gap Insurance Plan "F" with each cause of action beginning April 16, 2018 thru the present date i.e. indiviauls who were eligible to convert their Medi-gap Plan "F" to Medi-gap Plan "G" with each Defendant without each Defendant utilizing their past medical history "pre-existing conditions" as qualifying criteria.

6. Each Defendant, United of Omaha Life Insurance Company and Omaha Supplemental Insurance Company are corporations who are licensed to do business in Cameron County in the State of Texas who can be served by serving: James Blackledge, C.E.O of United of Omaha Life Insurance Company and Omaha Supplemental Insurance Company, c/o Mutual of Omaha Plaza, Omaha, Nebraska, (see **Exhibit "B"**)

7. Venue in Cameron County, Texas is proper in this cause under *Section 15.002 (a)(1)of the Te^. Civ. <Prac. JAnd(Rgm. Code* because all or a substantial part of the events or omissions giving to rise to the claims asserted herein occurred in Cameron County, Texas

## II.

## POLSKY TEXAS DECEPTIVE TRADE PRACTICES ACT FAILURE TO INFORM POLSKY ABOUT HIS ABILITY TO PURCHASE MEDIGAP PLAN "G"

8. The Plaintiff, LARRY MARK POLSKY, MEMBER OF A "CLASS", re-alleges by reference, paragraphs 1-7 of this Plaintiffs First Amended Complaint.

   a. Pursuant to *Texas (Business and Commerce Code §17.505,* the Plaintiff, 60 days prior to filing this lawsuit, gave written notice to the Defendants advising the Defendants in reasonable detail of the consumer's specific complaints and the amount of economic damages and expenses including attorney fees, incurred by the consumer in asserting the Plaintiffs claims against the Defendants, (see **Exhibit "A"**)

   b. That the Plaintiff is a consumer pursuant to *section 17.45(4) of the Texas (Business and Commerce Code* which defines a consumer as an individual who seeks relief due to any purchase of any goods or services...

   c. That your Plaintiff decided to switch from his Medi-gap Plan "F" coverage underwritten by Defendants, United of Omaha Life Insurance Company to Medi-gap Plan "G" coverage as underwritten by Defendant, Omaha Supplemental Insurance Company in early January 2020 because the premium of Medi-gap Plan "G" cost 50% less with identical coverage as Plaintiffs Medi-gap Plan "F" coverage and only a one time a year $198 yearly deductible payment had to be made by Plaintiff under Medi-gap Plan "G".

   d. Plaintiff had been insured for Medi-gap insurance Plan "F" underwritten by Defendant. United of Omaha Life Insurance Company since January 1, 2017 and was never informed by Defendant, United of Omaha Life

Insurance Company since January 1, 2017 that he could have had **identical coverage** under its Plan "G" for 50% of the monthly premium of its Plan "F" if Plaintiff had **merely** paid the yearly $198 cash deductible "upfront payment."

e. This breach United of Omaha's Life Insurance Company's duty to its insured, the Plaintiff was a breach of its duty of "good-faith and fair dealing" to inform Polsky its insured of this policy "choice" and a breach of its fiduciary duty to Plaintiff under Texas Law.

f. Your Plaintiff as an existing policy holder was never informed in the Medi-gap Plan "F" contract he signed with Defendants on January 1, 2017 nor in any documents that are allegedly incorporated by reference into said Medi-gap Plan "F" contract on January 1, 2017 that if he attempted to switch his Medi-gap Plan "F" coverage with the Defendants to Medi-gap Plan "G" coverage with the Defendant that Defendants would utilize Plaintiffs past medical history to evaluate and "rate" his eligibility for said "change" an illegal act by OMAHA SUPPLEMENTAL INSURANCE COMPANY not written into Plaintiffs Health policy contract.

g. If Plaintiff had been made aware of this fact in January 1, 2017 by OMAHA SUPPLEMENTAL INSURANCE COMPANY, Plaintiff would have immediately chosen Medi-gap Plan "G" and not Medi-gap Plan "F." (see **Exhibit "C"**)

That Plaintiff relied to his detriment in believing Medi-gap Plan "F" was the **cheapest** health plan Defendants offered to Plaintiff that would pay the **highest percentage** of Plaintiff s medical bills was due to OMAHA SUPPLMENTAL INSURANCE COMPANY.

h. If Plaintiff **had been informed by Defendants beginning on January 1, 2017 he could have had the exact same coverage** with Defendants Medi-gap Plan "G" that would have paid the same bills with the same deductibles and the same waiting periods as OMAHA SUPPLEMENTAL INSURANCE COMPANY Medi-gap Plan "F" but with a premium

      costing $135 less per month and which only required Plaintiff to pay a "mere" $198 "out of pocket" each year "up front monies, " Plaintiff would have beginning on January 1, 2017 purchased Medi-gap Plan "G" coverage with Defendant United of Omaha Life Insurance Company and saved himself $1,422 per year premium cost for identical Health Insurance Coverage underwritten with the Defendant, United of Omaha Life Insurance Company under its Medi-gap Plan "G" plan.

    i. The Defendants had a duty to disclose those facts to its Medi-gap Plan "F" policy holder Mr. Polsky i.e. a **fiduciary duty** owed to Polsky plus the **"duty of good faith and fair dealing"** (see **Exhibit "D"**) owed to Polsky to inform him, that Defendant's Medi-gap Plan "G" was available to him at 50% of the cost of Medi-gap Plan "F" if Polsky merely paid a one time yearly cash deductible sum of $198 i.e. a **duty to disclose the "whole truth."** See H*oggett v. Brown, 971 SW2d.472, 487(Texas Court of Appeals-Houston, 14th District 1997) Pet.* denied.

    j. Defendant, OMAHA SUPPLEMENTAL INSURANCE COMPANY its agent's servants and employees who serviced Defendant's Medi-gap Plan "F" policyholders in the state of Texas from January 1, 2017 thru the present date specifically knew its customers were being grossly overcharged by almost double the cost of what their Med-gap "F" coverage was costing them as compared to Medi-gap Plan "G" eventhough Medi-gap Plan "G" offered the exact same coverage as Medi-gap "F" at 'A the cost (minus the $198 yearly deductible) and yet even with this specific knowledge OMAHA SUPPLEMENTAL INSURANCE COMPANY intentionally chose to never inform its individual customers of this savings and instead chose to unjustly enrich itself, to the detriment of the Plaintiff and those in the Plaintiffs class.

9. As a direct and proximate result of the Defendant, United of Omaha Life Insurance Company violating the *Texas Deceptive Trade Practices Acts § 17.46(6) (24) which* states:

> **Deceptive acts or practices include failing to disclose information concerning good or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed.**

Plaintiff demands damages for the time period of January 1, 2017 through the present day pursuant to §17.50 of the Texas Business and Commerce Code, in an amount of $ 15,000 for compensatory damages, plus damages for mental anguish in the past of $25,000 and attorney fees of $50,000 and court costs of $10,000 and treble damages of $150,000 said total damages totaling $250,000 and trial by jury.

### III.

### CLASS ACTION ALLEGATIONS

10. Plaintiff, LARRY MARK POLSKY brings this lawsuit on behalf of himself and the proposed Class under *Te^as Rules of Civil Procedure 42* and Texas Insurance Code 541.258 *Texas Rules of Civil Procedure*. In addition to statutory damages for Class Members, this action seeks recovery of injunctive and equitable relief, attorney's fees and any and all other damages, in law or in equity, arising from both Defendants actions.

11. The proposed class definition is a follows:

> All Health insurance policy holders in the State of Texas of UNITED OF OMAHA LIFE INSURANCE COMPANY AND OMAHA SUPPLEMENTAL INSURANCE COMPANY who beginning January 1, 2017 had a Medi-gap Plan "F" Policy with Defendants who were not given the written option by both Defendants to "roll over" said Medi-gap Plan "F" Policy into a Medi-gap Plan "G" Policy without the Defendants utilizing said policy holder's past medical histories i.e. pre-existing conditions as a qualifying "bar."

12. Additionally this class action is being brought pursuant to Texas Insurance code 541,051(l)(A)(B), 541.052(5), 541.061 (1)(2)(3)(4)(5), 541.151 and 541.152.

13. This Class is so numerous that joinder of all members of the Class is impracticable. The precise number of members of the Class and their addresses are presently unknown to obtain said fordable Medi-gap Plan "G" coverage to Plaintiff but is believed to exceed

10,000 people in Texas since January 1, 2017. The precise number of persons in the Class and their identities and addresses may be ascertained from both Defendants' records. If deemed necessary by the Court, members of the class may be notified of the pendency of this action by mail, supplemented by published notice.

14. The proposed Class is ascertainable. The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and hence will have binding effect on all Class members. These Class Members can be readily identified from Defendant's records, public records and other means readily available to Defendants and through minimally intrusive discovery.

15. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class. These common legal and factual questions include without limitations:

    A. Failure of both Defendants to inform its existing Medi-gap Plan "F" policy holders such as the Plaintiff, Larry Mark Polsky, Esq. DOB September 21, 1947 from January 1, 2017 thru the present day they could switch over to Medi-gap Plan "3" just by merely requesting said change and Defendants could not legally utilize the existing Policy holder's pre-existing medical history as a "bar" disallowing said existing policy holder to switch from Medi-gap Plan "F" to Medi-gap Plan "G".

    B. Failing to inform its existing health Medi-gap Plan "F" policy holders from January 1, 2017 thru the present day such as the Plaintiff, Larry Mark Polsky DOB: 9/21/47 that his existing Medi-gap Plan "F" policy would cost him $271.27 per month as compared to him switching to a Med-gap "G" policy with Defendants which would cost "Polsky" $125.19 per month (a savings in monthly premium of $146.08 per month for Polsky for "identical" health coverage) with his Medi-gap Plan "F' policy other than the Medi-gap "G" policy having Polsky pay a $ 198 cash deductible "upfront" per year.

    C. From January 1,2017 thru the present by failing to treat existing policyholders such as Larry Mark Polsky, Esq. DOB: 9/21/1947 as "fiduciaries" and treat

       Polsky with the duty of "good faith and fair dealing" allowing them to switch from his Medi-gap Plan "F" to Medi-gap Plan "G" by informing them the Medi-gap Plan "G" coverage was identical to Medi-gap Plan "F" but cost 50% less with a $198 "cash out of pocket" "upfront" payment each year.

   D. From January 1, 2017 thru the present affirmatively **misrepresenting** to its existing **Medi-gap "F" health customers** such as Larry Mark Polsky, Esq. that Medi-gap Plan "F" was its most comprehensive health **insurance policy** when in point of fact, Defendants' Medi-gap policy "G" offered identical coverage at 1/2 the premium monthly cost with the only difference being Plaintiff had to pay $198 out of pocket deductible per year.

   E. That Larry Mark Polsky's quarterly premium under his existing Medi-gap Plan "F" was $813.81 (see **Exhibit "E"**) per quarter BUT Defendants on July 18, 2020 informed Plaintiff his quarterly premium would increase to $871.60 per quarter… costing Plaintiff an additional $231.16 per year in premium which Plaintiff and others in his class would not have to pay if Defendants had given Plaintiff and those in his class the option to switch to Medi-gap Plan "G." (see **Exhibit "F"**)

16. Plaintiffs claims are typical of the proposed Class because Plaintiff and all Class members are existing Medi-gap Plan "F" policyholders in Texas during the period of January 1, 2017 through the present date and just by signing and dating a "simple form" could have saved 50% of their health premium yet still maintained identical health insurance coverage switched to i.e. Medi-gap coverage Plan "G" with Defendant for 50% less premium and merely paid a $198 "upfront" cash deductible per year.

17. Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interest that are antagonistic to those of the proposed Class and in point of fact his interests are identical to those of the classes.

18. The proposed Class has a well-defined community of interests in the questions of fact and law to be litigated. The common questions of law and fact predominate with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiff has claims typical of the class members.

19. A class action is the superior method for fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.

20. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, class adjudication presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

21. Plaintiff is a competent and experienced trial lawyer in the prosecution of this type of litigation and has participated and represented class action Plaintiffs in the past both at the trial level and the Appellate level in similar cases Plaintiff is a "Bulldog" and has consistently been "David fighting Goliath"... interested in Justice for his clients!

22. Plaintiff demands a Jury Trial on all factual issues.

## IV

### EMOTIONAL DAMAGES FROM UNITED OF OMAHA LIFE INSURANCE COMPANY AND OMAHA SUPPLEMENTAL INSURANCE COMPANY

23. Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

24. Defendants' UNITED OF OMAHA LIFE INSURANCE COMPANY AND OMAHA SUPPLEMENTAL INSURANCE COMPANY engaged in an unconscionable course of action by its actions as previously described herein and especially OMAHA SUPPLEMENTAL INSURANCE COMPANY by illegally and fraudently attempting to utilize Polsky's pre-existing medical conditions as a rationale to deny him coverage Medi-gap plan "G".

25. Defendants' UNITED OF OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY conduct as described above was a producing cause of Plaintiff s economic damages. As a further result of Defendant's conduct, Plaintiff has suffered total economic and mental anguish damages which is

within the jurisdictional limits of this court and which includes "tripling" Plaintiffs damages and merits an award of attorney fees and costs.

26. Defendants' UNITED OF OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY conduct described above was committed knowingly and intentionally. Both Defendants were actually aware, at the time of the conduct of the falsity, deception, and unfairness of the conduct about with Plaintiff complains.

27. As a direct result of Defendants' knowing and intentional misconduct, Plaintiff has suffered mental anguish. In particular, Plaintiff suffered feelings of humiliation, frustration, powerlessness and belittlement.

28. Accordingly, Defendants UNITED OF OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY are liable to Plaintiff for mental anguish damages and additional damages of up to three times the amount of economic damages as permitted by the Texas Deceptive Trade Practices Act.

29. Plaintiff requests a Jury Trial on all factual issues.

## V

## FRAUD OF UNITED OF OMAHA LIFE INSURANCE COMPANY AND OMAHA SUPPLEMENTAL INSURANCE COMPANY

30. Plaintiff re-alleges and incorporates by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

31. Defendants' OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY engaged in an unconscionable course of action by its actions as previously described herein and especially OMAHA SUPPLEMENTAL INSURANCE COMPANY by illegally and fraudently attempting to utilize Polsky's pre-existing medical conditions as a rationale to deny him Medi-gap Plan "G."

32. Defendants' OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY made fraudulent misrepresentations and omissions of material facts to Plaintiff regarding its ability to be convert his Medi-gap

Plaintiff's First Amended Complaint

Case 1:20-cv-00146   Document 10   Filed on 10/09/20 in TXSD   Page 11 of 13

Plan "F" to their Medi-gap Plan "G" rather than informing Plaintiff his best economic choice with Defendants' OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY would be to change his Med-gap Plan "F" coverage to Medi-gap Plan "G" coverage on January 1, 2017 where he would have identical health insurance coverage other than having to pay a $198 yearly "out of pocket" deductible one-time only "upfront' each year.

33. Defendants' OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY their agents, servants or employees acting in the course and scope of their employment that their representations were false when they were made, or, in the alternative, Defendants made these representations without any regard for their truth.

34. Defendants' OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY intended that Plaintiff rely on their misrepresentations and/or omissions. The conduct of Defendants' OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY was such as to rise to the level of fraud.

35. Fraud by omission is a subcategory of fraud because an omission or nondisclosure may be as misleading as a positive misrepresentation of fact when a party has a duty to disclose. *Manon v. Solis,* 142 S.W.3de 380,387 (Tex.App.-Houston[14th Dist.] 2004, pet.denied). A failure to disclose does not constitute fraud unless there is a duty to disclose the information. See *Moris,* 981 S.W.2d at 674; *Hoggett* v. *Brown,* 971 S.W.2d.472, 487 (Tex App.-Houston [14th Dist.] 1997, pet. denied).

36. A duty to disclose may areise not only when there is a confidential or fiduciary relationship, but also in the three following situations; (1) when one voluntarily discloses information, he has a duty to disclose the whole truth; (2) when one makes a representation, he has a duty to disclose new information when he is aware that the new information makes the earlier representation misleading or untrue; and (3) when one makes a partial disclosure and conveys a false impression, he has a duty to speak. *Anderson, Greenwood & Co.v. Martin,* 44 S.W.3d 200,212-13 (Tex. App.-Houston [14th Dist.] 2001, pet denied).

11 | P a g e
Plaintiff's First Amended Complaint

37. Plaintiff relied; to his detriment on these fraudulent misrepresentations and suffered economic damage of $1,422 per year and economic damages since January 2, 2017 also including Attorney fees and costs.

38. Plaintiff requests a Jury Trial on all factual issue.

## VI

### EXEMPLARY DAMAGES OF OMAHA LIFE INSURANCE COMPANY AND OMAHA SUPPLEMENTAL INSURANCE COMPANY

39. Plaintiff re-alleges and incorporate by reference the preceding paragraphs for all purposes the same as if set forth herein verbatim.

40. Defendants' GMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY engaged in an unconscionable course of action by its actions as previously described herein and especially OMAHA SUPPLEMENTAL INSURANCE COMPANY by illegally and fraudently attempting to utilize Polsky's pre-existing medical conditions as a rationale to deny him coverage for Medi-gap plan "G."

41. As a result of Defendants OMAHA SUPPLEMENTAL INSURANCE COMPANY grossly negligent actions as described herein, Plaintiff has suffered economic damages and damages of mental anguish sustained in the past and attorney fees and costs in an amount within the jurisdictional limits of this court. Plaintiff requests attorney fees and costs, mental anguish damages and exemplary damages in the amount of $200,000 from OMAHA LIFE INSURANCE COMPANY and OMAHA SUPPLEMENTAL INSURANCE COMPANY.

42. Plaintiff requests Trial by Jury on all exemplary damages issues.

## VII

### ATTORNEY FEES

41. Plaintiff requests attorney fees pursuant to Texas Business and Commerce Code Section 17.50 (d) to be determined by a Jury for all work done on this case for himself and the "class".

Respectfully Submitted,

Larry Mark Polsky, Esq.
State Bar No. 16105500
5 Cactus Wren Court
Laguna Vista, TX. 78578
(956)943-7717 Telephone
(956)943-7709 Facsimile
Mossadl947@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify that was electronically filed with the Southern District Court Clerk in accordance with the Texas Rules of Civil Procedure on this 9th day of October, 2020 and a copy by regular mail to:

Larry Mark Polsky, Esq.

**Cc: USPS Regular Mail**
Jason A. Richardson
1001 Fannin, Suite 2700
Houston, TX 77002