Case 1:20-cv-00146   Document 18   Filed on 02/19/21 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
February 19, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LARRY MARK POLSKY, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-146 |
| | § | |
| UNITED OF OMAHA LIFE | § | |
| INSURANCE COMPANY, et al., | § | |
|    Defendants. | § | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Larry Mark Polsky, acting pro se[1], has sued United of Omaha Life Insurance Company ("United of Omaha") and Omaha Supplemental Insurance Company ("Omaha Supplemental") (collectively "Defendants."). Dkt. No. 10.  Polsky alleges that the Defendants engaged in deceptive acts – in violation of the Texas Deceptive Trade Practices Act – by failing to inform him that he could save money and receive nearly identical health insurance coverage by switching to a different policy.  Polsky also claims that the Defendants engaged in fraud when they declined to offer him a new policy based on his medical history.  He also seeks damages for mental anguish. Id.

On October 23, 2020, the Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. Dkt. No. 13.  The motion has been fully briefed and is ripe for adjudication. Dkt. Nos. 14, 15.

After reviewing the record and the relevant case law, it is recommended that the motion to dismiss be granted.  Simply stated, Polsky has failed to state a claim upon which relief can be granted.

---

[1] The Court notes for the record that Polsky is a licensed attorney who has previously represented plaintiffs in class action proceedings. Dkt. No. 10, p. 9.

1

**I. Background**

    **A. Factual Background**

To fully understand the claims in this case, the Court must briefly explain how Medicare supplemental insurance ("Medigap") operates.

"An individual may purchase a [Medigap] policy, sold by a private company, to help pay some of the health care costs that original Medicare does not cover, such as copayments, coinsurance, and deductibles." 5 Soc. Sec. Law & Prac. § 66:36. "State and federal law comprehensively regulate Medigap insurance policy terms, rates, and marketing." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 186 (2d Cir. 2020).

A Medigap "Plan F" policy "covers 100% of an Original Medicare enrollee's deductibles and copayments, with no out-of-pocket limit, in exchange for a monthly premium." U.S. v. Aetna Inc., 240 F. Supp. 3d 1, 12 (D.D.C. 2017). "The only difference between [Plan F] and [Plan G] is that Plan G policyholders have to pay the Part B deductible each year before Medigap coverage is triggered." 347 Elder Law Advisory NL 1.

The Court notes, in passing, that Plan F is no longer available for sale for anyone who was not already eligible for Medicare as of January 1, 2020. 42 U.S.C. § 1395ss(z)(1)-(2). Persons who were already on Medicare before January 1, 2020 – such as Polsky – can keep their Plan F policy. Id.

Under Texas law, there are certain conditions under which a Medigap policy "must not discriminate in the pricing of a Medicare supplement policy because of health status, claims experience, receipt of health care, or medical condition, and must not impose an exclusion of benefits based on a preexisting condition." 28 TEXAS ADMIN. CODE § 3.3312(a)(2). This right to coverage – where price and availability are not conditioned on health status or pre-existing conditions – is known as the right to guaranteed issue. Id.

For example, a person is eligible for guaranteed issue if: (1) the prior insurance has stopped providing its plan; or (2) the prior plan no longer conforms to federal and state requirements; or (3) they are enrolling within the first six months after enrolling in

Medicare. 28 TEXAS ADMIN. CODE § 3.3312(a)(2); § 3.3324(a).  Outside of the enumerated exceptions, there is no right to guaranteed issue. Id.

Beginning on September 1, 2012, Polsky was insured by United of Omaha with a Medigap Plan F policy. Dkt. No. 13-1, p. 4.  Polsky alleges that United of Omaha never informed him that – beginning on January 1, 2017 – "he could have had identical coverage under its Plan G for 50% of the monthly premium of its Plan F if the Plaintiff had merely paid the yearly $198 cash deductible upfront payment." Dkt. No. 10, p. 4 (internal quotation marks omitted).  Polsky alleges that he would have saved $1,422 per year in premiums by switching from Plan F to Plan G. Id., p. 5.

In January 2020, Polsky decided to switch from Plan F to Plan G. Dkt. No. 10. Polsky applied for a Plan G policy through Omaha Supplemental. Id.

Polsky alleges that he was never informed that if he attempted to switch from Plan F to Plan G that Omaha Supplemental would analyze his medical history to determine his new insurance rate. Dkt. No. 10. In other words, Polsky alleges that he was never informed that he was not entitled to guaranteed issue. Id.

Based upon his medical history, Omaha Supplemental declined to offer Polsky a Plan G policy. Dkt. No. 10.

**B. Procedural History**

On July 9, 2020, Polsky filed a complaint in the 103rd District Court in Cameron County, Texas. Dkt. No. 1-2.  Polsky alleged that United of Omaha engaged in deceptive acts – in violation of the Texas Deceptive Trade Practices Act – by failing to inform him that he could save money and receive nearly identical coverage by switching from Plan F to Plan G.  Polsky sought damages for fraud, mental anguish and punitive damages. Id., pp. 9-10.

Polsky also sought to bring a class action lawsuit on behalf of "All Health insurance policy holders in the State of Texas who beginning April 16, 2018 had a Medi-gap Plan F Policy with Defendant who were not given the written option by Defendant to roll over said Medi-gap Plan F Policy into a Medi-gap Plan G Policy without the Defendant utilizing

3

said policy holder's past medical histories as a qualifying bar." Id., p. 6 (internal quotation marks omitted).[2]

On September 21, 2020, United of Omaha timely removed the case to this Court based on diversity jurisdiction. Dkt. No. 2. No party disputes that diversity jurisdiction is present. Dkt. No. 16, p. 1.

On October 9, 2020, Polsky filed his first amended complaint. Dkt. No. 10. In this complaint, he added Omaha Supplemental as a defendant. He raised the same substantive claims against both United of Omaha and Omaha Supplemental: deceptive trade practices, emotional anguish, fraud and punitive damages. Id.

On October 23, 2020, United of Omaha and Omaha Supplemental filed a motion to dismiss for failure to state a claim upon which relief can be granted. Dkt. No. 13. The Defendants argued that (1) Polsky was not entitled to guaranteed issue when he attempted to switch to Plan G; (2) his claims are precluded by the filed rate doctrine; (3) the complaint fails to allege any deceptive acts; (4) he has failed to state a claim for fraud, emotional or exemplary damages. Id.

On November 2, 2020, Polsky filed a reply. Dkt. No. 14. Polsky argues that (1) the failure to warn him about the lack of guaranteed issue was not written into his policy; (2) the filed rate doctrine is inapplicable to this case; (3) the failure to accurately inform Polsky about the benefits of Plan G constituted fraud by omission. Id.

On November 9, 2020, the Defendants filed a reply brief. Dkt. No. 15. They argue that Polsky's claims all fail because they are based on the incorrect argument that Polsky was entitled to guaranteed issue. Id.

---

[2] Because the Court is recommending that the motion to dismiss be granted as to Polsky, it also serves to dismiss any class action claims. See Beavers v. Metro. Life Ins. Co., No. CIV.A. G-07-00260, 2007 WL 3342540, at *2 (S.D. Tex. Nov. 8, 2007), aff'd, 566 F.3d 436 (5th Cir. 2009) ("In the class action context, if the defendant demonstrates that the named plaintiffs' cause of action should be dismissed for failure to state a claim, the entire putative class action complaint should be dismissed.").

**II. Applicable Law**

   **A. Motion to Dismiss**

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." Ferguson v. Bank of New York Mellon Corp., 802 F.3d 777, 780 (5th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. Id. at 679. "[A] complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." Shepherd on behalf of Estate of Shepherd v. City of Shreveport, 920 F.3d 278, 287 (5th Cir. 2019) (quoting Anderson v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008)). This represents a change from the previous standard, which merely required a plaintiff to show that "any set of facts or any possible theory he may prove [would be] consistent with the [legal] allegations in the complaint." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019). All well-pled facts must be viewed in the light most favorable to the plaintiff. Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan, 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal for failure to state a claim upon which relief can be granted is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

### B. Deceptive Trade Practices

The elements of a Texas Deceptive Trade Practices Act claim are that "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constitute a producing cause of the consumer's damages." Doe v. Boys Club of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995). As relevant here, "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed" is defined as a deceptive act within the statute. Tex. Bus. & Com. Code § 17.46(b)(24).

### C. Fraud

The elements of fraud are that: "(1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C., 546 S.W.3d 648, 653 (Tex. 2018), reh'g denied (June 15, 2018) (internal quotations omitted).

State law fraud claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). These requirements are to be imposed "strictly," requiring a plaintiff to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Id.

### D. Mental Anguish

The Texas Supreme Court has limited the circumstances under which plaintiffs can recover for mental anguish as the result of the loss of property. City of Tyler v. Likes, 962 S.W.2d 489, 496-97 (Tex. 1997). "Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a

6

shocking and disturbing nature that mental anguish is a highly foreseeable result. These include suits for wrongful death and actions by bystanders for a close family member's serious injury." Id., at 496.

### III. Analysis

Polsky has raised three overarching claims against the Defendants: (1) violations of the Deceptive Trade Practices Act; (2) fraud; and (3) emotional anguish. As discussed below, Polsky's complaint fails to state a claim to relief as to any of these allegations.

#### A. Deceptive Practices

Polsky alleges that the Defendants engaged in a deceptive act by (1) not informing him that he could save money by switching plans and (2) denying him coverage under Plan G after using his health information to determine eligibility. These claims are meritless.

As previously noted, Polsky bought his Plan F policy in September 2012 from United of Omaha. Dkt. No. 13-1, p. 4. The crux of his claim is that the Defendants failed to inform him in 2017 that he could save money by switching from Plan F to Plan G. Dkt. No. 10, p. 4. He is not claiming that the Defendants misrepresented the nature of either Plan F or Plan G, but merely that they failed to inform of the relative benefits and costs of each plan. According to Polsky, this failure amounted to a failure to act on the part of Defendants.

Under Texas law, "when a party voluntarily discloses information, the party has the duty to disclose the whole truth." George Joseph Assets, LLC v. Chenevert, 557 S.W.3d 755, 766 (Tex. App. 2018). Polsky does not claim that the Defendants failed to give him all of the facts about Plan F. Polsky argues that failing to inform him that Plan G was a better deal was a failure to disclose the whole truth. Dkt. No. 10, p. 5.

A claim for failing to disclose the whole truth "requires a factual representation that leaves out other facts that are material to the representation's veracity." Pleasant Grove Indep. Sch. Dist. v. FieldTurf USA, Inc., No. 06-19-00022-CV, 2020 WL 1646633, at *12 (Tex. App. Apr. 3, 2020), reh'g denied (June 10, 2020). Polsky has never claimed that either Defendant made a factual representation that Plan F represented the best combination of cost and coverage for his individual needs. That failure dictates that this claim must fail.

7

At its core, Polsky's argument leads to an absurd result. To give an example, if a customer walks into a car dealership and asks for a vehicle that gets at least 30 miles per gallon, seats five people and has less than 40,000 miles on the odometer, the salesman may have several vehicles available that fit this description. Under Polsky's theory, it would be a deceptive trade practice for the salesman to steer the customer to the most expensive vehicle that fits this description without informing them there is a cheaper vehicle on the lot that is also available. Under Polsky's theory, it would be a deceptive trade practice for a store to tell you that a name brand laundry detergent is highly effective at removing stains without also telling you that the store brand detergent is equally effective at a lower price.

The Deceptive Trade Practices Act exists to ensure that "descriptions of goods or services offered for sale are accurate." Daugherty v. Jacobs, 187 S.W.3d 607, 614 (Tex. App. 2006). If the descriptions are accurate, then it is the customer's job to comparison shop for the goods or services that best suit their needs. Polsky is not alleging that any Defendant gave him an inaccurate description of Plan F or Plan G, but that they did not do the comparison shopping for him. There can be no doubt, under the facts of this claim, that Polsky has failed to state a claim upon which relief can be granted.

### B. Fraud

Polsky alleges that the Defendants engaged in fraud by (1) not informing him that "his best economic choice" was Plan G, rather than Plan F; and (2) by "illegally and fraudulently attempting to utilize Polsky's pre-existing medical conditions" to decline to offer him a Plan G policy. Dkt. No. 10, p. 10-11.

To successfully state a claim for fraud, Polsky must plead facts showing that the Defendants made a false material representation; did so knowingly or recklessly; intending to induce him to act on it; and, that he suffered an injury as a result. Orca Assets G.P, 546 S.W.3d at 653.

Again, both of his fraud claims are meritless.

#### 1. Best Economic Choice

Polsky's first claim is that the Defendants engaged in fraud by omission by not affirmatively representing to him that Plan G was the best plan for his needs. Plan F "fully

8

covers virtually all costs that a Medicare beneficiary would encounter within the Medicare system." 347 Elder Law Advisory NL 1. As previously stated, the difference between Plan F and Plan G is that Plan F covers the Part B deductible and Plan G does not. Id. The Part B deductible was $198 in 2019. Id.; Dkt. No. 10, p. 11.

Thus, a customer's priorities will dictate the choice between Plan F and Plan G. If the customer values having a single fixed cost (the Medigap premium payment) without having to worry about unexpected expenses, then Plan F is the better choice. If the customer values having a lower Medigap premium payment and is okay with being forced to pay the $198 Plan B deductible out of pocket, then Plan G is the better choice. Polsky asserts that the second option is the one that best meets his needs. As a consumer, he is entitled to that opinion, but not every customer would weight the cost and benefits and come to the same conclusion.

His fraud by omission claim rests on the foundation that Plan G is the better financial choice for every Medigap consumer in Texas. No support is offered for this position. Instead, Polsky seems to argue that because he would conclude this, that others would conclude the same. Polsky would place an affirmative duty on the Defendants to inform all consumers that their "best economic choice" is to choose a Part G policy. He has cited no caselaw for the proposition that an entity that sells multiple products has an affirmative duty to inform the customer which product is their "best economic choice." This is because none exists. Polsky has not pled that any Defendant misled him about the cost and benefits of Plan F or Plan G. Accordingly, he has not pled a viable fraud by omission claim and his claim should be dismissed.[3]

---

[3] The Defendants have urged that Polsky's claims are barred by the filed rate doctrine. "The filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." Texas Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 507 (5th Cir. 2005). Polsky is not claiming that the prices charged for Plan F were too high, unfair or unlawful. Instead, he asserts that the Defendants failed to inform him that Plan G was "his best economic choice." Dkt. No. 10, p. 11. Accordingly, the filed rate doctrine would not foreclose this claim. See Grigson v. Farmers Grp., Inc., 2017 WL 4706913, at *5 (W.D. Tex. Oct. 18, 2017), report and recommendation adopted, No. 2018 WL 635173 (W.D. Tex. Jan. 19, 2018) (holding that the filed rate doctrine does not apply to a claim by a customer

### 2. Pre-Existing Conditions

Polsky alleges that Omaha Supplemental engaged in fraud when it denied him a policy based on its analysis of his medical history. Dkt. No. 10, pp. 10-11. Polsky has pled that the Defendants acted "knowingly and intentionally" when they denied him Plan G coverage based on his medical history. Dkt. No. 10, pp. 9-10. Contrary to Polsky's assertions, they also acted legally.

As previously noted, there are certain statutory situations where a customer has guaranteed issue rights to purchase a Medigap policy. 28 TEXAS ADMIN. CODE § 3.3312(a)(2). As relevant here, a person is eligible for guaranteed issue if: (1) the prior insurance has stopped providing its plan; or (2) the prior plan no longer conforms to federal and state requirements; or (3) they are enrolling within the first six months after enrolling in Medicare. 28 TEXAS ADMIN. CODE § 3.3312(a)(2); § 3.3324(a). Outside of the enumerated exceptions, there is no right to guaranteed issue. Id.

Polsky had no right to guaranteed issue of a Plan G policy. He has not shown that his Plan F coverage was being discontinued or no longer conformed to state or federal requirements. He was also far beyond his first six months in Medicare. Indeed, he signed up for Medicare in September 2012. Dkt. No. 13-1, p. 5. In short, Polsky has failed to identify any statute giving him the right to guaranteed issue when he attempted to switch to Part G. As such, Omaha Supplemental was legally permitted to analyze Polsky's medical history before deciding if it wanted to offer him a policy.

Polsky points to no statements from the Defendants as to whether he was entitled to guaranteed issue. He claims that denying him a policy based on his medical history violated Medicare regulations, citing a government-issued guide. Dkt. No. 13-3, p. 34 (noting that under most conditions, a Medigap policy cannot choose to exclude pre-existing conditions). However, that same government guide states that "[i]n most cases, you won't

---

that they "should have been given access to a different policy and thus a different rate, and that [the insurance company] discriminated against them in denying them access to that rate."). This finding that filed rate doctrine is inapplicable does not impact the ultimate conclusion in this case.

10

have a right under Federal law to switch Medigap policies, unless you're within your 6-month Medigap open enrollment period or are eligible under a specific circumstance for guaranteed issue rights." Dkt. No. 13-3, p. 33.

The government-issued guide provided a key distinction between the decision to offer a policy and what kind of policy could be offered. Omaha Supplemental had the right to decline to offer Polsky a Plan G policy based on his medical history and pre-existing conditions. However, if it chose to offer him a Plan G policy, Omaha Supplemental did not have the unfettered right to decline to cover Polsky's pre-existing conditions. Thus, Omaha Supplemental could legally decline to offer Polsky a policy based on his pre-existing conditions and medical history, but was not authorized to offer him a policy that substantially limited the coverage of any pre-existing conditions.

All of these reasons lead to the conclusion that Polsky has failed to state a claim upon which relief can be granted and dismissal is proper.

### C. Mental Anguish

Polsky has sought damages for mental anguish. Again, he has failed to state a claim upon which relief can be granted.

Under Texas law, "there is no general duty to avoid negligently inflicting mental anguish upon others." SCI Texas Funeral Servs., Inc. v. Nelson, 540 S.W.3d 539, 543 (Tex. 2018). Instead, a plaintiff "may recover mental anguish damages only in connection with the breach of some other legal duty." UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc., 176 S.W.3d 595, 615 (Tex. App. 2005). In the absence of a violation of a specific legal duty, an individual has no right to damages based upon mental anguish.

"Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result. These include suits for wrongful death and actions by bystanders for a close family member's serious injury." Likes, 962 S.W.2d at 496. Furthermore, a plaintiff must plead facts showing "the nature, duration,

11

and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." SCI Texas Funeral Servs., 540 S.W.3d at 544.

Polsky claims that the Defendants acted intentionally when they: (1) did not inform him that Plan G was the better economic choice; and (2) when they analyzed his medical history before denying his application for a Plan G policy. As previously noted, neither of those actions were illegal. The absence of an illegal action by Defendants precludes recovery for mental anguish.

Even if the Court assumes that the Defendants engaged in an illegal action, Polsky has not pled facts as to the "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." SCI Texas Funeral Servs., 540 S.W.3d at 544. Instead, Polsky has alleged that he "suffered feelings of humiliation, frustration, powerlessness and belittlement" from being denied a Part G policy. He has pled no facts as to the duration and severity of his mental anguish. See Gill v. Boyd Distribution Ctr., 64 S.W.3d 601, 604 (Tex. App. 2001) (a plaintiff "will only be compensated for mental anguish rising above mere disappointment, anger, resentment, or embarrassment to cause a substantial disruption in daily routine or a high degree of mental pain and distress."). As with the other claims, the claim for emotional anguish should be dismissed for failure to state a claim upon which relief can be granted.

**IV. Recommendation**

It is recommended that the motion to dismiss filed by Defendants United of Omaha and Omaha Supplemental be granted. Dkt. No. 13.

All claims made by Plaintiff Larry Mark Polsky should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on February 19, 2021.

_____
Ronald G. Morgan
United States Magistrate Judge